**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| JEFF TOLLAKSEN AND JEFFREY PARKER, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> WIKIBUY, LLC; AND WIKIBUY HOLDINGS, LLC, <br><br> Defendants. | Civil Action No.: 1:25-cv-01426-MSN-IDD <br><br> **AMENDED CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Jeff Tollaksen and Jeffrey Parker ("Plaintiffs"), individually and on behalf of the

other members of the below-defined class (the "Class"), hereby allege against Defendants Capital

One Financial Corporation; Capital One, N.A.; Wikibuy LLC; and Wikibuy Holdings, LLC,[1] upon

personal knowledge as to themselves and their own acts, and as to all other matters upon

information and belief, based upon the investigation made by his undersigned counsel, as follows:

## I.    INTRODUCTION

1.      Financial institutions make millions, if not billions, of dollars every year by

convincing consumers to make purchases based upon deals, rewards, and other incentives.

Typically, an offer comes in, the customer accepts it, and the financial institution takes a cut of the

sale. Capital One offers its own type of tool—Capital One Shopping—which has attracted millions

---

[1] Capital One Financial Corporation and Capital One, N.A. are collectively referred to herein as "Capital One."  Wikibuy LLC and Wikibuy Holdings, LLC are collectively referred to herein as "Wikibuy Defendants."  The Wikibuy Defendants and Capital One are collectively referred to herein as "Defendants."

1

of users nationwide, with promises for exclusive deals, coupons, and better prices. Capital One makes consumers offers. Consumers take the offers and make purchases. But Capital One routinely does not hold up its end of the bargain.

2.      Originally launched as Wikibuy, Capital One Shopping automatically scans thousands of retailers to find and apply the best available coupon codes at checkout. It also compares prices in real time, alerting users if a better deal is available from another seller, factoring in shipping costs and membership discounts.

3.      The tool works on major browsers, does not require a user to have a Capital One account, and allows users to track price drops on specific items and search through aggregated prices across multiple retailers. In addition to coupons and price comparisons, Capital One Shopping also advertises that its users can earn credits—rewards that can be redeemed for gift cards at popular retailers—just by making purchases from participating merchants.

4.      These services should make the Capital One Shopping tool a valuable, convenient way to save both time and money without manually hunting for discounts.

5.      But Capital One Shopping operates as a bait-and-switch scheme: it promises rewards and incentives to consumers, but frequently and systematically fails to honor its promises. The rewards and incentives often never materialize—despite a customer making a qualifying purchase—and when they do, the so-called "rewards" are often for lower amounts than advertised. Customers use Capital One Shopping because they believe that they are making smart purchasing decisions and will make some of their money back in rewards. But once customers have spent their money, Capital One Shopping will often fail to give the customers what was promised.

2

6.     Because Capital One Shopping does not operate as promised, the bait-and-switch allows Capital One to amass large amounts of customer information and commissions, while not holding up its end of the bargain.

7.     Plaintiffs Jeff Tollaksen and Jeffrey Parker are two of millions of customers who used Capital One Shopping.  Defendants routinely did not credit to them rewards which they had earned, often failing to record legitimate transactions, providing a reward at a substantially lower rate than advertised, reducing their rewards to zero, or even deciding, retroactively, that their purchases were ineligible for rewards. Plaintiffs tracked their Capital One purchases, saved Capital One's promises—often sent directly to their e-mails—and retained evidence demonstrating Capital One's systematic failures to honor its promises.

8.     Defendants have engaged in unlawful, deceptive, and unfair conduct. They dupe consumers into using their service, collect customer data, and enrich themselves on commissions, all without providing promised rewards to consumers.  Accordingly, Plaintiffs bring this action individually and on behalf of all others similarly situated, for damages and injunctive relief.

## II.     JURISDICTION AND VENUE

9.     The Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because: (a) at least one member of the Class is a citizen of a state different from that of Defendants; (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs; (c) the Class consists of more than 100 class members, and (d) none of the exceptions under 28 U.S.C. § 1332(d) apply to this action.

10.     This Court has personal jurisdiction over Capital One Financial Corporation because it is headquartered in McLean, Virginia, does business in Virginia directly or through

3

agents, and has sufficient minimum contacts with Virginia such that it has intentionally availed itself of the Commonwealth's laws.

11.     This Court also has personal jurisdiction over Defendants Wikibuy, LLC, and Wikibuy Holdings, LLC.  Although both are Delaware limited liability companies, they were acquired by Capital One and have their headquarters in Virginia.

12.     Venue is proper under 28 U.S.C. § 1391(a)-(d), because Defendants' headquarters and principal place of business are located in this judicial district, they reside in this district, and substantial parts of the events or omissions giving rise to the claims occurred in or emanated from this district, including, without limitation, decisions made by Defendants' governance and management personnel.  Further, the terms and conditions[2] governing the Capital One Shopping rewards program provide that disputes should be resolved in the Commonwealth of Virginia, based upon the Commonwealth's laws.

### III.    PARTIES

**A.    Plaintiffs**

13.     Jeff Tollaksen is a resident of the State of California. He has used the Capital One Shopping product for approximately five years.

14.     Jeffrey Parker is a resident of the State of Pennsylvania. He has used the Capital One Shopping product for over five years.

**B.    Defendants**

---

[2] Capital One Shopping, United States Terms of Service, Section 26.
https://capitaloneshopping.com/our-terms/terms-of-service (last updated Mar. 12, 2025).

15.     Capital One Financial Corporation is a corporation organized and existing under the laws of the State of Delaware, with its headquarters and principal place of business in McLean, Virginia.[3]

16.     Capital One, N.A., is a federally chartered national bank with its headquarters and principal place of business in McLean, Virginia, and is wholly owned by Defendant Capital One Financial Corporation.[4]

17.     Wikibuy Holdings, LLC is the contracting entity under the Capital One Shopping Terms of Service (*i.e.*: the "we" in the terms). Wikibuy Holdings, LLC is a wholly-owned subsidiary of Capital One Financial Corporation, and has been since it was acquired by Capital One Financial Corporation in 2018. Wikibuy Holdings, LLC is organized in Delaware and is headquartered in McLean, Virginia.

18.     Wikibuy, LLC, originally developed the Capital One Shopping browser extension, and operates it on behalf of Capital One Financial Corporation. Wikibuy, LLC is a wholly owned subsidiary of Capital One Financial Corporation, and has been since it was acquired by Capital One Financial Corporation in 2018. Wikibuy, LLC is organized in Delaware and is headquartered in McLean, Virginia.

## IV.    FACTUAL ALLEGATIONS

### A.    Background

19.     In late 2018, for an undisclosed amount, Capital One acquired Wikibuy LLC, which had developed an online-shopping tool called "WikiBuy." The WikiBuy tool allowed consumers

---

[3] All claims against Capital One Financial Corporation contained in the original Complaint were dismissed on February 13, 2026 (Doc. 45). Plaintiffs include Capital One Financial Corporation herein solely for the purposes of preserving their right to appeal.
[4] All claims against Capital One, N.A. contained in the original Complaint were dismissed on February 13, 2026 (Doc. 45). Plaintiffs include Capital One, N.A. herein solely for the purposes of preserving their right to appeal.

to compare product prices when shopping online.

20.  The Wikibuy Defendants created the tool, including programming it and creating its user flows which, based upon information and belief, are materially and substantially similar to how the tool operates today. After acquiring Wikibuy LLC, Capital One rebranded the tool, calling it Capital One Shopping.

21.  Capital One aggressively and successfully marketed Capital One Shopping: today, the tool boasts more than 10 million users, and accounted for 16.9% of all desktop visits to coupon sites during 2023.[5]

22.  Capital One markets the Capital One Shopping browser extension as a free tool that helps consumers save time and money while shopping online. The extension is available to everyone; a consumer need not be a Capital One customer to use it.

23.  Consumers can use Capital One Shopping on desktop and laptop computers by downloading the browser extension from their web browser's extension store. Consumers can also use Capital One Shopping on mobile devices by downloading the Capital One Shopping mobile application from the Apple App Store or Google Play Store.

24.  On the Capital One Shopping website, Defendants claim that they make money on purchases through a commission structure, and that they share commissions through Capital One Shopping via rewards—which consumers can redeem for eGift cards from dozens of different retailers.[6]

---

[5] Coupon Statistics, https://capitaloneshopping.com/research/coupon-statistics/ (last updated July 1, 2025).

[6] Capital One Shopping, United States Terms of Service, Section 3.a.ii. https://capitaloneshopping.com/our-terms/terms-of-service (last updated Mar. 12, 2025).

25.    Capital One Shopping's rewards cannot be purchased, and the only way to receive them is to use Capital One Shopping's browser extension or mobile app.[7]

26.    Through email correspondence and communications on the mobile app, Capital One Shopping users—including Plaintiffs and the other Class members—receive offers for specific rewards or shopping deals.  By clicking on links in these offer emails, or by using the browser extension or mobile app to click or tap on deals, Defendants are able to trace each Class member's purchases on third-party merchant websites, and credit customers with the appropriate reward as a result of their acceptance of a particular offer.

27.    Capital One Shopping users—including Plaintiffs and the other Class members— also receive emailed offers for exclusive rewards or shopping deals that may not be available to the general public. After a consumer clicks on one of these email offers, Defendants' browser extension tracks them in the same way, and reports the completion of a "Shopping Trip" to Defendants so that rewards can be provided.

28.    But as Plaintiffs' experiences demonstrate, even when Capital One Shopping explicitly promises "rewards," it routinely does not provide them. Despite following Capital One Shopping's instructions, Defendants repeatedly deny rewards, reward Shopping Trips at a lower rate than initially advertised, and, in many cases, fail to record purchases *at all*, depriving Plaintiff Jeff Tollaksen alone of thousands of dollars.

29.    As Plaintiffs' experiences also demonstrates, even when Capital One Shopping promised a personalized reward at a specific rate, such as a cash-back percentage of an eligible purchase, the percentage reward was often lowered to the public, non-personalized amount, or reduced to some arbitrary, lesser number, resulting in a bait-and-switch.

---

[7] *Id.*

30.    Capital One Shopping's Terms of Service explicitly promise that "[i]f there is a loss of Shopping Rewards in your Account due to technical or operational problems with the Services, we may replenish the lost Shopping Rewards once the loss has been verified."[8]

31.    Despite offering the ability to recoup rewards, Defendants routinely ignored or denied Plaintiff Tollaksen's requests and, based upon information and belief, set up a process to ensure that Class members would be unable to obtain rewards to which they were entitled.

32.    Defendants ensured that requests from Capital One Shopping users—including Plaintiff Tollaksen and the other Class members—were frequently met with resistance. They made sure their customer service agents lacked the ability or authority to ensure that the correct amount of rewards were provided. And, they otherwise flatly admitted to its users that it would not (and could not) fulfill their promises.

33.    This type of practice—sometimes coined as "sludge"—is designed to frustrate consumers, prevent them recouping rewards to which they are entitled, and, ultimately, are designed for the sole benefit of Defendants.[9] Defendants have broadly adopted this "sludge" as a business tactic to cut down on rewards they would otherwise have to provide to consumers, including Plaintiffs and the other Class members.

---

[8] *Id.*

[9] *See, e.g.,* Chris Colin, *That dropped call with customer service?  It was on purpose*, The Atlantic (June 29, 2025), https://www.theatlantic.com/ideas/archive/2025/06/customer-service-sludge/.

**B.      Capital One Shopping taps into a large and growing market for coupons and discounts.**

34.      Capital One Shopping produces extensive research on coupon and reward programs globally, and in the United States, and makes that research publicly available.[10] Using the data and insights compiled by Capital One Shopping, it is clear that the Defendants are tapping into a global market that is large, and fast-growing. The mobile coupon market alone was valued at $727.3 billion in 2024 and is projected to reach $1.6 trillion by 2030. The U.S. mobile coupon market was valued at $199.0 billion in 2024, up 14.0% year-over-year. [11]

35.      The number of digital coupon users in the U.S. is steadily growing, with 165.5 million Americans (62.0% of adults) redeeming digital coupons in 2024.[12]

36.      Coupon redemption is increasingly completed on mobile devices: 93.5% of digital coupon users redeem coupons using a smartphone, while 41.9% use tablets.[13]

37.      The coupon market has driven significant sales: online retailers report that consumers who use coupons spend 24% more than those who do not, and nearly 40% of Americans would buy a new brand or buy sooner due to a coupon.[14]

38.      Even more importantly, a lack of discount or coupon may drive down sales: 75% of Americans who abandon online shopping carts are influenced by cost and lack of coupon discounts.[15]

---

[10] Coupon Statistics, https://capitaloneshopping.com/research/coupon-statistics/ (last updated July 1, 2025).

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

39.    In this enormous, influential, and growing market, Capital One Shopping is the most downloaded mobile discount app in the U.S., with 12.4 million downloads.[16]

40.    In today's Internet-centric economy, most coupons are found online, with 47% of consumers finding them from brand emails, 46% from online searches, and 34% from coupon websites. Given these numbers, it is unsurprising that more than 80% of Americans have signed up for email offers to receive digital coupons and discounts.[17]

41.    Coupons and discount programs, when fairly and appropriately run, save American consumers a lot: the average American using digital coupon codes saves $1,465 annually, or 6.4% of average household spending. Nationwide, 40% of online purchases can be matched with a coupon, with an average savings at checkout of $30, or 17.2% of the total purchase. [18]

**C.    Capital One directly offers "rewards" in exchange for select purchases.**

42.    Capital One Shopping provides a dashboard by which consumers can review their savings and a catalog of their activity, which includes the total value of rewards they have been awarded for qualifying purchases. By way of example, the following screenshot displays Plaintiff Tollaksen's current dashboard.:

---

[16] *Id.*

[17] *Id.*

[18] *Id.*



43.    The rewards accrued are directly tied to purchase activity: by making an eligible purchase, consumers such as Plaintiff Tollaksen can earn rewards, which are generally identified as a percentage of the total purchase.

44.    For instance, in the above example, Plaintiff Tollaksen made an eligible purchase of $101.76 from eBay on July 21, 2025, which should qualify for a $6.61 reward—or, approximately 6%. In the above example, Capital One Shopping has not yet paid out this reward, and as of July 28, 2025, was marked as "Pending."

45.    As consumers make qualified purchases, rewards are attributed to their Capital One Shopping accounts—or they should be.

46.     These rewards are valuable: Capital One Shopping tells consumers that they can redeem these rewards for e-gift cards through the Capital One Shopping portal, often in amounts between $10 and $25.

47.     Capital One Shopping communicates reward offers to Plaintiffs and the other Class members directly through personalized e-mails, the browser extension, and the mobile application.

48.     Reward offers were presented to Plaintiffs as percentages of purchases from merchants, often with a limit or eligibility requirement (such as "Earn 25% in Rewards, up to $250").  Every reward offer and representation at issue originated exclusively from Capital One Shopping, not from merchants; only Capital One Shopping communicated and presented these offers to Plaintiffs.

49.     For example, the following reward offers were sent to Plaintiff Tollaksen over e-mail:





**D.      Capital One repeatedly engages in "bait and switch" practices.**

50.      Plaintiff Tollaksen has identified hundreds (if not thousands) of transactions, totaling many thousands of dollars in rewards, which Defendants failed to deposit into his account. Based upon Plaintiffs' use of their Capital One Shopping accounts, and through representations made by customer service agents, Plaintiffs understand that the other Class members similarly have not had rewards properly deposited into their accounts.

51.      Capital One Shopping offers rewards, but systematically fails to deliver them, in several different ways:

> **i.**      **The Lower Reward Rate Scheme**. Capital One Shopping fails to apply the proper reward rate, often applying a lower, public reward rate, instead of the higher rate that is offered to Plaintiffs and the other Class members often through e-mails.
>
> **ii.**      **The Eligibility Scheme**. Capital One Shopping also arbitrarily determines certain purchases to be "Ineligible," despite those purchases satisfying all eligibility requirements—and often does not issue these denials until 60-to-90 days after a purchase. Even when Capital One Shopping does identify a purchase as eligible for

rewards, it often adjusts that reward downward, with no explanation for the drop in reward amount.

**iii.** **The Failure To Record Scheme**. At other times, Capital One Shopping fails to record legitimate purchases, entirely failing to tally up a "Shopping Trip" that is eligible for rewards.

52. Each of Defendants' reward denial methods constitutes an unlawful, deceptive, and unfair bait-and-switch practice, designed to get consumers to make purchases with the expectation of rewards that never materialize, or that are substantially lower in amount than promised.

**i.** **The Lower Reward Rate Scheme: Capital One pays lower rewards than promised.**

53. Capital One frequently promises an attractive reward amount through "personalized" emails. These "personalized" emails provide links through which Capital One Shopping users can access exclusive deals that include attractive rates on rewards.

54. However, despite the Capital One Shopping tool tracking these purchases, the rewards actually provided to consumers are often at lower rates than originally promised.

55. By way of example, Plaintiff Tollaksen received a "personalized" offer in an email from Capital One, which advertised the opportunity to "Earn 30% in Rewards, Up to $250" for a qualifying purchase from retailer "Steep & Cheap." The following is a screenshot of the portion of the e-mail Plaintiff Tollaksen received containing the "Steep & Cheap" offer:



**A Steep & Cheap deal for you.**
Earn 30% in Rewards, Up to $250

**steep&cheap**

56.     The term "30% in Rewards" represents a promise to provide Plaintiff Tollaksen with a "Reward" in Capital One Shopping Rewards of 30% of what he spent at Steep & Cheap. Plaintiff clicked on the offered link on March 15, 2025, and completed a purchase for $161.23. Plaintiff should have received 30% of that purchase price, which is $48.37, in rewards. Instead, he received $3.22 in rewards: a mere 2% of the purchase price, rather than the 30% advertised. The ultimate "reward" was captured in his Capital One Shopping portal:



| Date & Time | Source | Purchase Amount | Shopping Savings | Shopping Rewards | Shopping Rewards Status | Total Shopping Rewards and Savings |
|---|---|---|---|---|---|---|
| Mar 15 10:51 AM | Steep & Cheap | $161.23 | -- | $3.22 | Pending | $3.22 |

Trip Number  592c63c662724207ad5f0d08db1875db
Order Number  5418.6283.897342
Expected Payout Date  April 15 2025

57.     Despite Capital One Shopping's clear tracking of the purchase through its browser extension (recording the Shopping Trip Number and the Order Number associated with the purchase), Capital One provided only a small fraction of the overall reward to which Plaintiff Tollaksen was entitled, without any explanation, and without any chance for appeal.

58.     In another example, Plaintiff Tollaksen made a qualified purchase through a "personalized" offer sent to him by Capital One in an email, which offered the opportunity to "Earn 15% Back, Up to $250" for purchases made from "Dick's Sporting Goods."



59.     His purchase, made on January 27, 2025, was for $140.20, which should have provided him a reward of $21.03, or 15% of the overall purchase price.

60.     Yet, when he went to check on this reward, Plaintiff Tollaksen found he had only been awarded $6.72 in rewards back on his $140.20 purchase—a mere 5%.

61.    On August 27, 2025 Plaintiff Parker received a "personalized" offer in an email from Capital One, which advertised the opportunity to "Earn 20% in Rewards, Up to $250" for a qualifying purchase from retailer "JD Sports." The following is a screenshot of the portion of the e-mail Plaintiff Parker received containing the "JD Sports" offer:



62.    The term "20% in Rewards" represents a promise to provide Plaintiff Parker with a "Reward" in Capital One Shopping Rewards of 20% of what he spent at JD Sports. Plaintiff clicked on the offered link on March 27, 2025, and completed a purchase for $189.00. Plaintiff should have received 20% of that purchase price, which is $37.80, in rewards. Instead, he received $3.78 in rewards: a mere 2% of the purchase price, rather than the 20% advertised. The ultimate "reward" was captured in his Capital One Shopping portal:



63.    In each of these instances, the Capital One Shopping dashboard fails to indicate to consumers that they have been rewarded at a lower rate than was originally promised.

64.    As a result, many of Capital One Shopping's users were shortchanged valuable program rewards and were not even aware that Capital One lowered the reward rate. Plaintiffs only became aware of their damages when they began to compare the original, advertised reward percentages to the credited percentages that he was actually receiving. As explained above, it often takes many days for a reward to ultimately be reflected in the Capital One Shopping dashboard: as a result, customers understandably may never learn that they have been shortchanged when, days, later, it becomes clear the reward they've been given is far less than the one that was promised.

65.    These purchases are examples of hundreds of other purchases made by Plaintiffs, and millions of similarly bait-and-switched purchases made by the other Class members, each an example of the scheme that Capital One has knowingly perpetrated: offering attractive reward rates for purchases, with the knowledge that it would award rewards substantially under the promised amount.

66.    At times, instead of simply paying a lower reward rate than promised and offering no indication that it had done so, the Capital One Shopping program will show a reward for a tracked, eligible purchase as having been "Adjusted." Unsurprisingly, these "adjustments" are never upward—they are only ever made in Capital One's favor.

67.    For instance, on February 7, 2025, Plaintiff Tollaksen made an eligible purchase from Steep & Cheap for $181.98. This purchase was credited a reward that was "Adjusted" to $3.63, amounting to a fraction of the percentages typically offered by Capital One Shopping.

| Feb 07 9:58 PM | Steep & Cheap | $181.98 | -- | $3.63 | Adjusted | $3.63 | ∨ |

68.     No explanation was provided for this "Adjustment," nor was the amount of adjustment indicated in the Capital One Shopping dashboard.

69.     There was no obvious way to inquire about adjustment of rewards. Nevertheless, Plaintiff Tollaksen has been diligent about reaching out to Capital One regarding these downward adjustments and has never been successful in obtaining an explanation as to why certain rewards are credited, some are deemed ineligible, and some are "Adjusted."

70.     These "Adjustments" clearly show that Capital One reviews these purchases, but the criteria for adjustment are not identified in the Terms of Service for the Capital One Shopping program, nor are they indicated anywhere on the dashboard—or anywhere else for that matter.

71.     Instead, Plaintiff Tollaksen's eligible and credited rewards are edited downwards, often several weeks after that purchase was made, with no explanation for the downward revision. This represents a significant amount of rewards Capital One has unilaterally removed from Plaintiffs and other Class members, *after* an eligible purchase was made. This claw-back of rewards is an unfair and unlawful reneging on the deal between Plaintiffs and Capital One, and is one that is common and predominant among other Class members.

**ii.     The Eligibility Scheme: Capital One arbitrarily marks eligible purchases as "ineligible."**

72.     Capital One also frequently determines that eligible purchases from participating merchants are "Ineligible"—but these designations often come as many as 90 days later, which is often beyond the time allowed for product purchases to be returned.

73.     Plaintiff Tollaksen has suffered this fate hundreds of times over the course of five years: despite taking advantage of an offering from Capital One for rewards and completing an eligible purchase (which is identified correctly, tracked, and appears on his Capital One Shopping

18

dashboard), Capital One has frequently denied him rewards on the basis that his purchase was "Ineligible"

74.    For instance, on February 8, 2025, Capital One Shopping sent Plaintiff Tollaksen a private, personalized email advertising a 14% cashback reward (up to $250) for qualifying purchases made from Backcountry:



75.    Relying on this promotional offer, Plaintiff Tollaksen made an eligible purchase on February 8, 2025, totaling $467.50.

76.    Had this promotional 14% reward been applied correctly, a reward in the amount of $65.45 should have been applied to the Plaintiff Tollaksen's account (14% of the eligible $467.50 purchase amount).

77.    The Capital One Shopping program recorded the transaction, and Plaintiff Tollaksen's Capital One Shopping rewards profile noted that the February 8, 2025, Backcountry transaction had taken place: but Capital One Shopping ultimately provided no cashback reward for this transaction—instead, it determined that the transaction was ineligible and offered no explanation for its purported ineligibility.



| Feb 08<br>4:00 PM | evo | $467.50 | -- | -- | Ineligible |
|---|---|---|---|---|---|

Trip Number 🛈  5b85858c36264bada88ced1aeb962f3b

Order Number 🛈  19166799W

Expected Payout Date  --

78.    As illustrated above, Capital One Shopping tracked the Shopping Trip, assigning it a unique identifier, and correctly identified Plaintiff's order number. Capital One Shopping, however, deemed his purchase ineligible, despite Plaintiff having followed all steps necessary to obtain rewards for this purchase.

79.    Plaintiff Tollaksen complained to Capital One and submitted comprehensive documentation—including screenshots of the activated offer, receipts, and credit card statements— to Capital One Shopping's customer service representatives.  Capital One refused to credit this reward to his account, thus depriving him of $65.45 in earned rewards for this purchase alone.

80.    In another instance, on February 9, 2025, Plaintiff Tollaksen received an offer to "Earn 35% in Rewards, Up to $250") from Capital One Shopping on a purchase from Bose. He accepted this offer, and purchased a pair of Bose earbuds.



81.    Plaintiff Tollaksen made sure the purchase was completed through the Capital One Shopping extension, confirmed the 35% rate was properly activated at checkout, and ensured that these advertised headphones were not excluded by the terms of the deal.

82.    The total price for Plaintiff Tollaksen's Bose purchase was $199.00. Plaintiff Tollaksen's total reward amount should have been $69.65.

83.    Plaintiff Tollaksen should have received 35% of the eligible purchase.   But Plaintiff Tollaksen received nothing for the transaction. Instead, Capital One marked it as "Ineligible," *despite the deal coming from Capital One*.



84. Plaintiff Tollaksen repeatedly attempted to have this issue remedied. Plaintiff Tollaksen engaged in extended exchanges with Capital One Shopping representatives, including several emails and phone calls in March, 2025. For instance, on March 19, 2025, Plaintiff Tollaksen emailed a letter enclosing 10 pages of examples, identifying 26 separate unrewarded or under-rewarded transactions, and including screenshots of offered reward rates, confirmation emails confirming eligible transactions, and credit card statements showing proof of the purchases—but Capital One Shopping refused to credit him with the promised amount, or any amount.

85. Instead, several weeks after the purchase, Plaintiff Tollaksen discovered that Capital One had determined his purchase was "Ineligible," but again failed to identify for what reason the transaction (which was properly identified and tracked by Capital One Shopping's program) was deemed to be ineligible for rewards.

86. Although Plaintiff Tollaksen provided documentation confirming receipt of the promotional email, the transaction date, and the order total, Defendants did not credit the promised reward, and Plaintiff was left with no reward for a transaction in which he would not have engaged, but for Capital One's offer email to him.

87. Plaintiff Tollaksen can identify hundreds, if not thousands, of transactions that Capital One unilaterally, and without explanation, determined were ineligible over the course of the last five years. These unrewarded purchases constitute thousands, if not tens of thousands of dollars, in unawarded rewards.

### iii. Failure To Record Scheme: Capital One frequently fails to record legitimate purchases at all.

88. Finally, Plaintiff Tollaksen has made many transactions that Capital One Shopping's reward program failed to track *at all*. As identified in the above screenshots, the Capital

One Shopping system assigns unique identifiers to transactions (or "Shopping Trips") that users begin by clicking on one of Capital One's offers.

89.     Upon information and belief, the Capital One Shopping browser extension (or the mobile app, depending on the method of purchase) tracks the purchase as it develops on the participating merchant's website, and reports the completed purchase to Capital One.

90.     Plaintiff Tollaksen has conducted thousands of purchases over the course of five years through the Capital One Shopping program, using both the browser extension on his computer, and his mobile app, and those he follows the process outlined by Capital One, frequently completes transactions that never appear in his dashboard, and are therefore never credited as eligible purchases.

91.     Plaintiff Tollaksen takes great pains to ensure that these purchases are recorded, including:

      a.     Beginning the purchase by using the link in a Capital One Shopping-sent email or through the mobile application's offerings;

      b.     Ensuring that the entire purchase proceeds in a single browser window;

      c.     Confirming that the Capital One Shopping browser extension is active; and

      d.     Not using any other promo codes, discount codes, or other browser extensions.

92.     Despite these precautions (which Plaintiff Tollaksen has confirmed are the steps necessary to be completely sure that a transaction will be identified, tracked, and rewarded by the Capital One Shopping program), Capital One has failed to identify and reward a significant number of these purchases.

23

93.     Plaintiff Tollaksen estimates that approximately *half* of the qualifying purchases that he made through the mobile application or browser extension were not recorded by Capital One Shopping's system *at all* and resulted in no rewards being attributed to his account.

94.     Upon information and belief, Plaintiff Parker also experienced multiple transactions never credited as eligible purchases. Using his previous Capital One Shopping account, Plaintiff Parker made many purchases that Capital One Shopping failed to record in the shopping portal at all. After multiple years of non-use, Plaintiff Parker logged back into his first account and now sees no transactions or shopping trips recorded at all and an empty rewards balance.

95.     Capital One is aware that a significant number of the purchases that Capital One Shopping users—including Plaintiffs and the other Class members—are making are not being tallied or rewarded, which leads to an enormous windfall for Capital One, as no rewards are ever paid out of the commissions that Capital One receives.

E.     **Defendants routinely failed to address Plaintiffs' issues through its customer service process.**

96.     Despite knowing that their systems were not identifying and attributing reward-eligible purchases, Defendants continued to categorically refuse to issue any reward (regardless of the documentation supplied) if Capital One Shopping's software failed to identify and track, confirm, or reward a Shopping Trip.

97.     As identified above, Capital One Shopping routinely failed to track Shopping Trips, or credited rewards to tracked Shopping Trips at rates lower than the rates displayed and confirmed at checkout.

98.     Plaintiff Tollaksen has contacted Capital One on numerous occasions to ensure that the correct rewards were attributed to his account, but each time he contacted Capital One, he was

24

informed of shifting documentation requirements, new restrictions, and arbitrary limits that were not included in the Terms of Service, or publicized anywhere else.

99. Plaintiff Tollaksen collected and offered substantial documentation of his purchases, including (but not limited to) screenshots of the "personalized" emails he received from Capital One (and which he used to "Unlock" an offer), screenshots of the completion of purchases on merchants' webpages, confirmation emails and receipts received from those merchants for those purchases, and credit card and bank statements showing deductions for the amounts purchased.

100. Plaintiff Tollaksen communicated with Capital One through email and by phone and offered this documentation to support the appropriate awarding of rewards for eligible transactions—documentation that he was asked to re-submit multiple times, despite shifting standards as to what documentation would be required. Plaintiff Tollaksen even went a step further and confirmed with the participating merchants that the disputed purchases occurred, and that the merchants had fulfilled their obligations under the Capital One Shopping rewards program.

101. Capital One Shopping nevertheless denied or ignored the vast majority of his correction requests.

102. On March 26, 2025, Capital One Shopping informed Plaintiff Tollaksen of yet another way it would refuse to honor its promises: a previously-undisclosed limitation that Capital One Shopping would only not consider for correction requests for correction that were "in excess of 10 or more orders" per customer. This arbitrary limitation on available remedies is not identified in the published Terms of Service. It also materially denied Plaintiff Tollaksen the ability to protest the failure of the Capital One Shopping software to properly attribute rewards, and unfairly limited his ability to ask for rewards that should have been awarded for eligible, documented purchases made from participating merchants.

103.    Only one escalation to a senior Capital One Shopping executive resulted in a partial credit; no other disputes were resolved in the Plaintiff Tollaksen's favor.

104.    Because of the length of time taken by Capital One Shopping to attribute rewards to his account (often over thirty days), the return windows on these purchases often closed before the Plaintiff Tollaksen learned that a purchase that should have been rewarded had gone unrewarded.

105.    Discouraged by his interactions with the Defendants, Plaintiff Tollaksen conducted research through social-media and consumer-complaint forums, and identified numerous reports from other users citing identical tracking failures, bait-and-switch reward reductions, arbitrary correction limits, and ineffective customer service.

106.    Capital One Shopping is aware of the ineffective, inefficient, and inconsistent nature of the function of Defendants' reward program: in multiple conversations with multiple different employees, Capital One Shopping has acknowledged to Plaintiff Tollaksen that the service frequently does not track and record eligible shopping trips.

107.    Capital One Shopping has continued to advertise elevated reward rates despite knowing that its system fails to honor them—and routinely benefits from offering illusory promotions of rewards that it then never has to pay out.

108.    Plaintiff Tollaksen has expended substantial time and resources attempting to secure the promised rewards and has suffered unreimbursed monetary losses investigating Capital One Shopping's deceptive misrepresentations and Defendants' failure to perform under contract.

F.    **Capital One Shopping affects millions of customers.**

109. Capital One Shopping's failure to properly apply rewards to consumers' accounts detrimentally affects a large number of consumers—including Plaintiffs and the other Class members.

110. According to Capital One Shopping's own research, Capital One Shopping was the most downloaded mobile discount application in the United States in 2024, with over 12,400,000 million downloads in that year alone. Capital One Shopping's high download rate on mobile platforms correlates with the rise of smartphone coupon redemption, which has significantly outpaced tablet usage among digital coupon users.

111. Capital One Shopping is a prominent resource for both routine and impulse purchases, encouraging increased spending through quick and easy discount application.

112. Capital One Shopping's research has also shown that the popularity of its application is attributed to widespread consumer interest in automated savings, particularly among those demographically inclined toward digital discounts over traditional paper coupons, and that repeat purchases are more likely through these automated discount applications, as substantial discounts and user-friendly digital redemption processes can serve as catalysts for consumer loyalty.

113. Plaintiffs' experiences are remarkably consistent with other Class members' reports: Capital One Shopping's uniform representations, both in promotional emails and through on-screen pop-ups through their mobile app and browser extension, indicate that once an award is "activated" the consumer will automatically earn the stated reward, valued at the percentage on the ensuing purchase, subject only to limited, clearly enumerated exclusions.

114.    Yet, even when Plaintiffs and the other Class members followed Defendants' step-by-step instructions, Capital One Shopping either failed to post any reward at all or retroactively downgraded or denied the promised award months after the transaction was completed.

115.    For example, one consumer reported receiving repeated promotional emails from Defendants touting cash-back rates of 25 percent, 31.5 percent, and 54.5 percent on Instacart purchases. She meticulously documented her compliance by: (a) taking screenshots of each promotional email, (b) capturing the "Reward Activated" confirmation on the merchant's landing page, and (c) preserving the final purchase-confirmation page.[19] Despite her exhaustive documentation, Defendants refused to credit the promised cash back. Only after multiple emails and weeks of delay did Defendants pay a portion of the owed reward; thereafter Defendants began issuing form denials asserting—contrary to the evidence—that the purchases involved "returns" or "ineligible items," none of which applied to the transactions at issue.[20] She came to the reasonable conclusion that Defendants were "not honoring their promotions at all," that consumers "can't speak to someone" about the problem, and that Defendants' conduct "should be illegal," given their withholding of "thousands" of dollars in unpaid awards.[21]

116.    Another consumer reported that, despite waiting the full 90-day period that the Defendants claim may sometimes be necessary to credit an award, and providing contemporaneous receipts to verify the purchases, Defendants nevertheless disclaimed any obligation to pay, asserting without evidence that the consumer "must have done something wrong."[22]

---

[19] Paola DiMeglio, *Not honoring offers - should have a class action suit* (Apr. 10, 2025), https://www.trustpilot.com/reviews/67f7dca4e71d00e3e3c9228a.

[20] *Id.*

[21] *Id.*

[22] JR, "Scam....Class action suit should be…," Apr. 8, 2025 (available at https://www.trustpilot.com/users/67f54520eb721a4c89d70f20).

117.    A third consumer described an identical pattern: Defendants' plugin displayed an "active" reward, induced them to complete the purchase, and later either erased the transaction entirely or re-classified the item as "ineligible."[23]

118.    A fourth consumer spent "thousands of dollars" on hotel bookings between November 2024 and January 3, 2025, using the Capital One Shopping app precisely because Defendants touted cash-back awards on travel expenditures. Of the "dozens" of qualifying transactions, this consumer complained that they received only one reward; the remaining purchases were either left in perpetual "unprocessed" status or were summarily labeled "ineligible." And when the consumer sought to challenge these denials, Defendants offered only generic, non-responsive answers and refused to examine the specific order information that the consumer provided.[24]

119.    A fifth consumer echoed these complaints: after carefully "follow[ing] all the steps" mandated by Defendants, he was denied cash back without explanation, forcing him to begin "recording the whole order process."[25]

120.    Collectively, these complaints reveal a remarkably consistent scheme in which Defendants lure consumers with conspicuously advertised cash-back percentages, confirm activation of those rewards at the point of sale, and then: (a) refuse to post any reward; (b) retroactively disallow the transaction as ineligible months later; or (c) reduce the promised percentage to a lower, previously-undisclosed rate.

---

[23] John, "How can the software/company be legal," Mar. 1, 2025 (available at https://www.trustpilot.com/users/6298adcd30e24a00124608a9).

[24] Kathryn M, "I have spent thousands of dollars…," Feb. 24, 2025 (available at https://www.trustpilot.com/users/67bd20a350283b9a1a1e9398).

[25] Fadi, "I agree that capital one shopping scams…," Jan. 20, 2025 (available at https://www.trustpilot.com/users/5cc3c9e78eb10e2087aa88f0).

121.    Defendants routinely justify non-payment by invoking vague, after-the-fact criteria—such as phantom "returns," unspecified "ineligible items," or user "error"—that were neither disclosed in the promotional materials nor applicable to the affected transactions.

122.    The delay tactics adopted by Defendants—including uniform references to a "processing" window—operate to frustrate consumers' ability to dispute missing rewards in real time, thereby increasing the likelihood that consumers will abandon or lose their claims. Meanwhile, consumers often have lost any opportunity to return the suddenly more expensive items they had purchased.

123.    Defendants' internal customer-service practices involve canned responses, refusal to examine user-supplied documentation, and the absence of any live, escalated support channel, all of which impede consumers' efforts to secure the awards they earned.

124.    As a direct result of Defendants' conduct, consumers—including Plaintiff and the other Class members—have been deprived of significant monetary benefits—often amounting to hundreds or thousands of dollars per person—despite their compliance with Defendants' published rules and technical requirements.

125.    Defendants' pattern of advertising high cash-back percentages, inducing purchases, and then systematically withholding or downgrading the promised awards constitutes a classic bait-and-switch, violates reasonable consumer expectations, and is the proximate cause of substantial economic injury to Plaintiff and the other Class members.

## V.    TOLLING OF THE STATUTES OF LIMITATION

126.    All applicable statutes of limitations have been tolled by Defendants' knowing and active concealment and denial of the facts alleged herein. Neither Plaintiffs, nor the other Class

30

members could have reasonably discovered Defendants' practices as described herein absent the significant investigation of Plaintiffs and their undersigned counsel.

127. Indeed, Defendants kept Plaintiffs and the other Class members ignorant of vital information essential to the pursuit of their claims. As a result, neither Plaintiffs nor the other Class members could have discovered that the Capital One Shopping program was not only incidentally denying them earned rewards, but systematically and routinely failing or refusing to provide them on a broad basis, even upon reasonable exercise of diligence.

128. Specifically, throughout the Class Period, Defendants have been aware that the Capital One Shopping program is not providing earned rewards, whether through failing to track eligible purchases, or rewarding eligible purchases with lower rates than advertised, or no reward at all.

129. Despite their knowledge of these denials and reductions in rewards, Defendants failed to disclose and concealed, and continue to conceal, this critical information from Plaintiffs and the other Class members, even though, at any point in time, it could have done so through individual correspondence, pop-up updates through its browser extension or mobile application, media release, or by other means.

130. Defendants affirmatively and actively concealed the fact that significant amounts of eligible purchases (close to 50%, in Plaintiff Tollaksen's experience) made through the Capital One Shopping program go unrewarded or under-rewarded, and continued to conceal this fact in every instance it sent email communications to the Plaintiffs and other Class members advertising new offers for rewards in exchange for eligible purchases.

131. Plaintiffs and the other Class members justifiably relied on Defendants to accurately disclose the reality of what rewards they would stand to receive after making eligible

purchases. The fact that a significant number of the rewards were in fact illusory was not discoverable through reasonable efforts by Plaintiffs and the other Class members.

132.   Thus, the running of all applicable statutes of limitation have been suspended with respect to any claims that Plaintiffs and the other Class members have sustained through Capital One Shopping failing to reward, or under-rewarding, eligible transactions, by virtue of the fraudulent concealment doctrine.

133.   Defendants were and remain under a continuing duty to disclose to Plaintiffs and the other Class members their practice of failing to disburse rewards to Plaintiffs and the other Class members. As a result of the active concealment by Defendants, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## VI.   CLASS ACTION ALLEGATIONS

134.   Plaintiff brings this action pursuant to Rules 23(a), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, individually and on behalf of all others similarly situated.

135.   Plaintiffs seek to represent the following class and state subclass (collectively, the "Class," unless otherwise identified), subject to amendment as appropriate:

> **Nationwide Class**: All natural persons in the United States who signed up for a Capital One Shopping rewards account and made eligible purchases that were either unrewarded or under-rewarded.

> **California Subclass:** All natural persons residing in the State of California who signed up for a Capital One Shopping rewards account and made eligible purchases that were either unrewarded or under-rewarded.

136.   Excluded from the Class are Defendants, including any parent, subsidiary, affiliate, or controlled person of Defendants; Defendants' officers, directors, agents, or employees, the judicial officers assigned to this litigation and any members of their staffs and immediate families, and any juror assigned to this action.

137.    Plaintiffs reserve the right to amend or modify the Class definitions.

138.    This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

139.    **Numerosity, Federal Rule of Civil Procedure 23(a)(1).**  Members of the Class are so numerous and geographically dispersed that joinder of all Class members is impracticable. While Plaintiffs are informed and believe that there are millions of Class members, the precise number of Class members is presently unknown to Plaintiffs, but may be ascertained from Defendants' books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

140.    **Predominance of Common Questions of Law or Fact, Federal Rules of Civil Procedure 23(a)(2) and (b)(3)**. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

      a.      Whether Defendants programmed and designed Capital One Shopping in a manner that wrongfully fails to credit Plaintiffs and the other Class members for rewards that are advertised to them;

      b.      Whether the actions described herein results in Capital One being awarded commission payments while not providing rewards to Plaintiffs and the other Class members;

      c.      Whether Capital One was unjustly enriched to the detriment of Plaintiffs and the other Class members by using their sensitive and personal information, as well as private shopping information, without providing promised rewards to Plaintiffs and the other Class members;

      d.      Whether Defendants, through the actions alleged in this complaint, interfered with Plaintiffs' and the other Class members' promised rewards;

      e.      Whether Defendants, through the actions alleged in this complaint, breached contractual promises to Plaintiffs and the other Class members;

      f.      Whether Defendants' actions were unlawful;

33

g.    Whether Plaintiffs and the other Class members have been damaged by Defendants' conduct; and

h.    Whether Plaintiffs and the other Class members are entitled to damages, equitable relief, injunctive relief, and other relief.

141.    **Typicality, Federal Rule of Civil Procedure 23(a)(3)**. Plaintiffs' claims are typical of the other Class members' claims. The factual and legal bases of Defendants' liability are the same and resulted in injury to Plaintiffs and all other Class members. Plaintiffs and the other Class members suffered damages as a direct proximate result of the same wrongful practices in which Defendants engaged.

142.    **Adequacy, Federal Rule of Civil Procedure 23(a)(4)**. Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Class that he seeks to represent, Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

143.    **Declaratory and Injunctive Relief, Federal Rule of Civil Procedure 23(b)(2)**. Defendants have acted or refused to act on grounds that apply generally to Plaintiffs and the other Class members, thereby making appropriate final injunctive and declaratory relief, as described below, with respect to the Class as a whole.

144.    **Superiority, Federal Rule of Civil Procedure 23(b)(3)**. Class treatment provides a superior method for adjudication of this controversy insofar as the class action can best secure the economics of time, effort, and expense and promote uniformity of decision. Litigating Class members' claims in a single action will eliminate the chance of inconsistent or varying adjudications. Such resolution will further allow Class members to present their claims efficiently; share the costs of litigation, experts, and discovery; and preserve judicial time and resources. A

class action is thus superior to other available means for the fair and efficient adjudication of Plaintiffs' and the other Class members' claims.

145.    **Certifying particular issues, Federal Rule of Civil Procedure 23(c)(4)**. In the alternative, certification of particular issues is appropriate in this case, as the issues will drive toward an ultimate resolution of the litigation.

## VII.    CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT
*(Against Defendants Capital One Financial Corporation, Capital One, N.A., and Wikibuy Holdings, LLC)*

146.    Plaintiffs repeats, realleges, and incorporates by reference paragraphs 1-145, above, as if fully set forth herein.

147.    The Capital One Shopping "United States Terms of Service" is an agreement between Defendants and the individuals who use Defendants' "Services," including Defendants' websites at capitaloneshopping.com and any subdomains, their browser extensions, including the Capital One Shopping extension, their Capital One Shopping mobile application, and all related websites, networks, applications, utilities, and functions, including the Capital One Shopping rewards program.[26]

148.    Plaintiffs and each of the other Class members used Defendants' Services.

149.    At all relevant times, Defendants' United States Terms of Service included the promise that "[i]n connection with various promotions and offers made available by us via Shopping ("Capital One Shopping Promotion(s)"), Defendants would "make available to you

---

[26] Capital One Shopping United States Terms of Service (Mar. 12, 2025), https://capitaloneshopping.com/our-terms/terms-of-service.

rewards offers in the form of Capital One Shopping Rewards ("Shopping Rewards" or "Rewards") for completing certain actions or activities."  Terms, at Section 3.a.ii.

150.    At all relevant times, Defendants also represented that these rewards would be provided "for purchases that satisfy all applicable eligibility requirements." Terms, at Section 9.a.

151.    At all relevant times, Defendants also promised that Defendants would "provide the relevant rewards to Capital One Shopping Users who satisfy both the terms of those Capital One Shopping Promotions and these Terms." Terms, at Section 34.

152.    Plaintiffs and the other Class members on one side, and Defendants on the other side, formed a contract when Plaintiffs and the other Class members each used Defendants' Services, including participating in Defendants' Capital One Shopping program.

153.    Plaintiffs and the other Class members fully performed their obligations under their contracts with Defendants.

154.    Defendants breached their agreement with Plaintiffs and each of the other Class members by failing to accurately track and record qualifying purchases made by Plaintiff and the other Class members, and failing to properly credit Plaintiffs' and the other Class members' Capital Shopping accounts with the rewards earned by Plaintiffs and the other Class members, in violation of the agreement.

155.    Defendants knew that their breach of these contracts would harm Plaintiffs and the other Class members.

156.    Defendants breached these contracts while acting in the ordinary course of business by failing accurately track and record qualifying purchases made by Plaintiffs and the other Class members, and failing to properly credit Plaintiffs' and each of the other Class members' Capital

36

Shopping accounts with the rewards earned by Plaintiffs and the other Class members, as stated herein.

157. Plaintiffs and each of the other Class members were harmed by Defendants' breaches in failing to accurately track and record qualifying purchases made by Plaintiffs and the other Class members, and failing to properly credit Plaintiffs' and the other Class members' Capital Shopping accounts with the rewards earned by Plaintiffs and the other Class members.

158. As a direct and proximate result of Defendants' breach of contract, Plaintiffs and each of the other Class members have been injured and are entitled to damages in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**
**BREACH OF IMPLIED CONTRACT**
*(Against Defendants Capital One Financial Corporation, Capital One, N.A.,*
*and Wikibuy Holdings, LLC)*

159. Plaintiffs repeat, reallege, and incorporate by reference paragraphs 1-145, above, as if fully set forth herein.

160. This Count is pleaded in the alternative to the breach of contract claim (First Cause of Action), above.

161. Plaintiffs and each of the other Class members entered into an implied contract with Defendants when they made qualifying purchases in response to rewards offers from Defendants received via email, through the Capital One Shopping browser extension, and through the Capital One Shopping mobile app.

162. As part of these transactions, Defendants agreed to track and record Plaintiffs' and the other Class members' qualifying purchases and to provide Plaintiffs and the other Class members with rewards for each qualifying purchase that each Plaintiff and each of the other Class members made.

37

163. Plaintiffs and the other Class members would not have made purchases in response to Defendants' rewards offers received via email, through the Capital One Shopping browser extension, and through the Capital One Shopping mobile app in the absence of the implied contract or implied terms between them and Defendants.

164. Plaintiffs and each of the other Class members fully performed their obligations under the implied contracts with Defendants.

165. Defendants breached their implied contracts with Plaintiffs and each of the other Class members by failing to properly track and record Plaintiffs' and the other Class members' qualifying purchases.

166. Defendants breached their implied contracts with Plaintiffs and each of the other Class members by failing to provide Plaintiffs and the other Class members with rewards for each qualifying purchase Plaintiffs and the other Class members made.

167. Defendants knew that their breach of these implied contracts would harm Plaintiffs and the other Class members.

168. Defendants breached these implied contracts while acting in the ordinary course of business by failing to properly track and record Plaintiffs' and the other Class members' qualifying purchases.

169. Defendants breached these implied contracts while acting in the ordinary course of business by failing to provide Plaintiffs and the other Class members with rewards for each qualifying purchase Plaintiffs and each of the other Class members made.

170. Plaintiffs and the other Class members were harmed by Defendants' breaches of the implied contracts in failing to properly track and record Plaintiffs' and the other Class members'

qualifying purchases; and also in failing to provide Plaintiffs and the other Class members with rewards for each qualifying purchase that Plaintiffs and each of the other Class members made.

171.    As a direct and proximate result of Defendants' breach of implied contract, Plaintiffs and each of the other Class members have been injured and are entitled to damages in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**
**UNJUST ENRICHMENT**
*(Against All Defendants)*

172.    Plaintiffs repeat, reallege, and incorporate by reference paragraphs 1-145, above, as if fully set forth herein.

173.    This Count is pleaded in the alternative to the breach of contract claim (First Cause of Action) and the breach of implied contract claim (Second Cause of Action), above.

174.    Plaintiffs and the other Class members lack adequate remedies at law.

175.    Plaintiffs and the other Class members have an interest, both equitable and legal, in the rewards to which they were wrongfully deprived. These rewards were rightfully earned by Plaintiffs and the other Class members, not Defendants.

176.    Plaintiffs and each of the other Class members conferred a benefit on Defendants, because Plaintiffs and each of the other Class members used the Capital One Shopping website, application, browser extension, and reward offer emails received from Defendants to go to merchants' web pages and make qualifying purchases that resulted in Defendants' receipt of a commission from the merchants, without Defendants providing Plaintiffs and the other Class members the promised portion of that commission in the form of rewards. Terms, at Section 3.a.ii. Defendants are not entitled to the portion of the commissions represented by the uncredited rewards.

177. Defendants knew that they were failing to provide Plaintiffs and the other Class members with Shopping Rewards for each qualifying purchase that Plaintiffs and each of the other Class members made.

178. Defendants should have reasonably expected to record and credit the earned rewards to Plaintiffs and the other Class members, because Defendants knew that consumers—including Plaintiffs and the other Class members—who make qualifying purchases through Defendants' Services are entitled to the promised rewards.

179. But for Defendants' failure to properly track and record Plaintiffs' and each of the other Class members' qualifying purchases; and their failure to provide Plaintiffs and the other Class members with rewards for each qualifying purchase that Plaintiffs and the other Class members made, Defendants would not have received a windfall of the portion of the commissions represented by the uncredited rewards that emanated from Plaintiffs' and the other Class members' unrecorded and uncredited qualifying purchases.

180. As a result of Defendants' wrongful conduct as alleged in this Complaint, Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and the other Class members. Defendants continue to benefit and profit from Plaintiffs' and the other Class members use of the Capital One Shopping website, application, browser extension, and reward offer emails received from Defendants to go to merchants' web pages and make qualifying purchases that result in Defendants' receipt of commissions from the merchants without Defendants providing them the promised portion of that commission in the form of rewards. Plaintiffs and each of the other Class members continue to have their rightful rewards kept by Defendants.

181.    Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including by failing to track and record Plaintiffs' and the other Class members' qualifying purchases and failing to credit Plaintiff and the other Class members the earned rewards for such purchases, with Defendants thereby wrongfully retaining a windfall in uncredited rewards.

182.    The benefit conferred upon, received, and enjoyed by Defendants was not conferred officiously or gratuitously, and it would be inequitable and unjust for Defendants to retain the benefit.

183.    Equity and good conscience militate against permitting Defendants to retain the profits and benefits from its wrongful conduct, which should be restored to Plaintiffs and each of the other Class members.

### FOURTH CAUSE OF ACTION
### CONVERSION[27]
*(Against All Defendants)*

184.    Plaintiff repeats, realleges, and incorporates by reference paragraphs 1-141, above, as if fully set forth herein.

185.    This Count is pleaded in the alternative to the breach of contract claim and breach of implied contract claim above.

186.    At the time Plaintiff and each of the other Class members made qualifying purchases on merchants' websites, Plaintiff and the other Class members had a right to possess the rewards earned through their qualifying purchases.  These rewards are specific to Plaintiff and each of the other Class members.

---

[27] The Court dismissed this cause of action on February 13, 2026 (Doc. 45). Plaintiffs include this count solely for the purposes of preserving it for appeal.

187.    Defendants wrongfully exercised control over the Plaintiff's and the other Class members' rewards by intentionally failing to track and record Plaintiff's and the other Class members' qualifying purchases and intentionally failing to credit Plaintiff and the other Class members the earned rewards for such purchases, thus depriving Plaintiff and the other Class members of their rewards on qualifying purchases.

188.    Defendants' wrongful exercise of control over Plaintiff's and the other Class members' rewards constitutes conversion.

189.    As a direct and proximate cause of Defendants' conversion, Plaintiff and each of the other Class members were harmed.

190.    Defendants are liable to Plaintiff and the other Class members for damages and costs permitted by law.

**FIFTH CAUSE OF ACTION**
**CALIFORNIA CONSUMER LEGAL REMEDIES ACT,**
**CAL. CIV. CODE §§ 1750, *et seq*.[28]**
*(Claims On Behalf of the California Subclass Against All Defendants)*

191.    Plaintiff repeats, realleges, and incorporates by reference paragraphs 1-141, above, as if fully set forth herein.

192.    This claim is brought by the Plaintiff individually and on behalf of the other members of the California Subclass, under the laws of California.

193.    The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*. ("CLRA") is a comprehensive statutory scheme that is to be liberally construed to protect consumers against unfair and deceptive business practices in connection with the conduct of businesses providing goods, property or services to consumers primarily for personal, family, or household use.

---

[28] The Court dismissed this cause of action on February 13, 2026 (Doc. 45). Plaintiffs include this count solely for the purposes of preserving it for appeal.

194.    Defendants are each a "person" as defined by Civil Code §§ 1761(c) and 1770, and each provided "services" as defined by Civil Code §§ 1761(b) and 1770. Specifically, Defendants provide the Capital One Shopping program to customers—including Plaintiff and the other California Subclass members—through which they offer opportunities to earn attractive rewards on qualifying purchases made through specific offers by participating third-party merchants.

195.    The Capital One Shopping program advertises the ability to earn Capital One Shopping Rewards on purchases from thousands of popular participating retailers and frequently advertises these rewards at attractive percentages. Defendants offer the Capital One Shopping program as a service that consumers—including Plaintiff and the other California Subclass members—can use to recoup a significant amount of their purchases in rewards, all just by using the Capital One Shopping browser extension or mobile application while making an eligible purchase.

196.    Plaintiff and the other California Subclass members are "consumers" as defined by Civil Code §§ 1761(d) and 1770, and have engaged in a "transaction" as defined by Civil Code §§ 1761(e) and 1770.

197.    Defendants' acts and practices were intended to and did result in the sales of products and services to Plaintiff and the other California Subclass members in violation of Civil Code § 1770, including:

      a.  Representing that goods or services have characteristics that they do not have;

      b.  Representing that goods or services are of a particular standard, quality, or grade when they were not;

      c.  Advertising goods or services with intent not to sell them as advertised; and

d.  Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

198.  Defendants violated Civil Code § 1770, in at least the following ways:

a.  Promising to track and record Plaintiff's and the other California Subclass members' qualifying purchases but failing or refusing to do so;

b.  Promising to provide rewards in exchange for qualifying purchases, but then determining purchases were ineligible for reward without providing information supporting the denial or allowing a method for appeal;

c.  Failing to credit awards to accounts where documentary evidence of qualifying purchases was provided, leading to a complete loss of earned rewards; and

d.  Advertising the opportunity to earn rewards at certain attractive rates, which were then either not awarded at all, or awarded at a reduced rate, resulting in an unlawful bait-and-switch.

199.  Defendants' misrepresentations and omissions were material because they were likely to deceive reasonable consumers about the fact that eligible purchases made with participating retailers through the Capital One Shopping program would yield Capital One Shopping Rewards at attractive, advertised rates.

200.  Defendants' misrepresentations and omissions were material because they were likely to deceive reasonable consumers, including Plaintiff and the other California Subclass members, into believing that they would receive the Capital One Shopping Rewards that were advertised to them in return for making eligible purchases from participating merchants, and that they would receive these rewards at the advertised amounts.

201. Had Defendants disclosed to Plaintiff and the other California Subclass members that the Capital One Shopping program would routinely fail to record eligible purchases, routinely fail to provide rewards at the advertised rates, routinely fail to provide rewards at all despite recording an eligible purchase from a participating merchant, and would not award earned rewards despite copious documentation and proof, Defendants would have been unable to continue in business and it would have been forced to redesign its systems to ensure advertised rewards were being paid for eligible purchases made by Plaintiff and the other California Subclass members.

202. Instead, Defendants have knowingly continued to operate the Capital One Shopping program, keeping commissions paid to it by participating merchants for eligible purchases, without relaying to consumers, including Plaintiff and the other California Subclass members, what they are contractually owed. Defendants accepted a contractual and statutory duty to provide Capital One Shopping program users rewards at advertised rates in exchange for eligible purchases made at participating merchants.

203. Accordingly, because Defendants openly advertised that the Capital One Shopping program would provide rewards in exchange for eligible purchases, Plaintiff and the other California Subclass members acted reasonably in relying on Defendants' misrepresentations and omissions, the truth of which they could not have discovered prior to making eligible purchases.

204. As a direct and proximate result of Defendants' violations of California Civil Code § 1770, Plaintiff and the other California Subclass members have suffered—and will continue to suffer—injury, ascertainable losses of money or property, and monetary and non-monetary damages, including the loss of their earned rewards that should have been credited to their Capital One Shopping accounts, and the time and expenses related to identifying and documenting the unrecorded qualifying purchases and unawarded rewards.

205.     Plaintiff and the other California Subclass members have provided notice of their claims for damages to Defendants, in compliance with California Civil Code § 1782(a). Plaintiff and the other California Subclass members at this stage do not yet seek the monetary relief allowed by law, but will amend their complaint to seek damages, an order enjoining the acts and practices described above, attorneys' fees, and costs under the CLRA once the pre-suit notice period has expired, and if Defendants have not provided a response that would provide Plaintiff and the other California Subclass members with appropriate redress.

**SIXTH CAUSE OF ACTION**
**CALIFORNIA UNFAIR COMPETITION LAW**
**CAL. BUS. & PROF. CODE §§ 17200, *et seq.*[29]**
*(Claims On Behalf of the California Subclass Against All Defendants)*

206.     Plaintiff repeats, realleges, and incorporates by reference paragraphs 1-141, above, as if fully set forth herein.

207.     This claim is brought individually under the laws of California and on behalf of all other natural persons who made qualifying purchases in response to rewards offers from Defendants received via email, through the Capital One Shopping browser extension, and through the Capital One Shopping mobile app.

208.     Defendants are each a "person" as defined by Cal. Bus. & Prof. Code §17201.

209.     Defendants violated Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

210.     Defendants' "unfair" and "deceptive" acts and practices include:

    a.  Promising to track and record Plaintiff's and the other California Subclass members' qualifying purchases but failing or refusing to record qualifying

---

[29] The Court dismissed this cause of action on February 13, 2026 (Doc. 45). Plaintiffs include this count solely for the purposes of preserving it for appeal.

46

purchases, leading to Plaintiff and the other California Subclass members being denied earned rewards;

b. Promising to provide rewards in exchange for Plaintiff's and the other California Subclass members' qualifying purchases, but then determining that a qualifying purchase was ineligible for reward, without providing information supporting the denial or allowing a method for appeal of the denial, leading to a complete denial of earned rewards;

c. Advertising the opportunity to earn rewards at certain attractive rates, which were then either not awarded at all, or awarded at a reduced rate, denying Plaintiff and the other California Subclass members the advertised reward they expected to receive;

d. Waiting to notify Plaintiff and the other California Subclass members of the denial of rewards on qualifying purchases until 60-90 days after the qualifying purchase was made, putting the Plaintiff and the other California Subclass members' purchases well beyond the refund window for products or services;

e. Offered an unhelpful, inefficient, and ineffective "customer service" line which failed or refused to provide rewards for wrongfully denied, or wrongfully untracked, qualifying purchases; and

f. Failing to credit awards to accounts where Plaintiff and the other California Subclass members provided documentary evidence of qualifying purchases that were not recorded, or recorded and unrewarded, or rewarded a lower percentage than was advertised.

211.   Defendants have engaged in "unlawful" business practices by violating multiple laws, including the CLRA, Cal. Civ. Code §§ 1780, *et seq.*, and the FTC Act, 15 U.S.C. § 45. Defendants' unlawful business practices include, but are not limited to:

   a.   Promising to track and record Plaintiff's and the other California Subclass members' qualifying purchases but failing or refusing to do so;

   b.   Promising to provide rewards in exchange for qualifying purchases, but then determining purchases were ineligible for reward without providing information supporting the denial or allowing a method for appeal;

   c.   Failing to credit awards to accounts where documentary evidence of qualifying purchases was provided, leading to a complete loss of earned rewards; and

   d.   Advertising the opportunity to earn rewards at certain attractive rates, which were then either not awarded at all, or awarded at a reduced rate, resulting in an unlawful bait-and-switch.

212.   Defendants' misrepresentations and omissions were material because they were likely to deceive reasonable consumers, including Plaintiff and the other California Subclass members, into believing that they would earn rewards at certain advertised rates for certain qualifying purchases that they would not have otherwise made.

213.   As a direct and proximate result of Defendants' unfair, unlawful, and fraudulent acts and practices, Plaintiff and the other California Subclass members were injured and lost money or property, including earned, unawarded rewards in the Capital One Shopping program, monetary damages from the purchase of goods and/or services that they would not have otherwise purchased if not for the attractive, falsely-advertised reward rates offered by Capital One Shopping.

48

214. Defendants acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded Plaintiff and the other California Subclass members' rights.

215. Plaintiff and the other California Subclass members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendants' unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

## VIII. <u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiffs, individually and on behalf of the other Class members, respectfully request that the Court enter judgment in favor of themselves and the other Class members and against Defendants as follows:

1. Certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure; declaring that Plaintiffs are proper class representatives; and appointing Plaintiffs' counsel as Class Counsel;

2. Granting permanent injunctive relief to prohibit and prevent Defendants from continuing to engage in the unlawful acts, omissions, and practices described herein;

3. Awarding Plaintiffs and the other Class members compensatory, consequential, and general damages, including nominal damages as appropriate, for each count as allowed by law in an amount to be determined at trial;

4. Awarding statutory damages, treble damages, and/or punitive or exemplary damages, to the fullest extent permitted by law;

5.    Ordering disgorgement and restitution of all earnings, profits, compensation, and benefits received by Defendants as a result of their unlawful acts, omissions, and practices alleged herein;

6.    Awarding to Plaintiffs the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

7.    Awarding pre-and post-judgment interest at the maximum legal rate; and

8.    Ordering all such other and further relief as may be just and proper.

## IX.    JURY DEMAND

Plaintiffs hereby demands a trial by jury on all claims so triable.

Dated:  May 15, 2026

Respectfully submitted,

*/s/ Barry Coburn*
*/s/ Marc Eisenstein*
Barry Coburn
Marc J. Eisenstein
**COBURN, GREENBAUM & EISENSTEIN PLLC**
1710 Rhode Island Avenue NW
2nd Floor
Washington, D.C. 20036
Tel.: 202-630-2844
barry@coburngreenbaum.com
marc@coburngreenbaum.com

Adam J. Levitt*
Amy E. Keller*
Nada Djordjevic*
Daniel Schwartz*
James Ulwick*
**DiCELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois  60602
Tel.:  312-214-7900
alevitt@dicellolevitt.com
akeller@dicellolevitt.com
ndjordjevic@dicellolevitt.com
dschwartz@dicellolevitt.com

50

julwick@dicellolevitt.com

David Straite*
Hannah Grace*
**DiCELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, New York 10017
Tel.:  646-933-1000
dstraite@dicellolevitt.com
hgrace@dicellolevitt.com

***Counsel for Plaintiff and the Proposed Class***


*\* pro hac vice*

51

**CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2026, I caused the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will then send notification of such filing to all counsel of record.

By: /s/ *Barry Coburn*
Barry Coburn (VSB No. 36907)

By: /s/ *Marc Eisenstein*
Marc Eisenstein (VSB No. 95482)

*Counsel for Plaintiffs*